UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Kirby J. Whitley | COMPLAINT |
|     Plaintiff, | |
| v. | Jury Trial Demanded |
| Hoffman of Albany Turnpike, Inc., | |
| Santander Consumer USA & | |
| Budco Financial Services, Inc. | May 27, 2011 |
|     Defendants. | |

## COMPLAINT

1. This is a suit brought by a consumer residing in Connecticut regarding the purchase and sale of a motor vehicle. Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant Hoffman of Albany Turnpike, Inc. ("Hoffman") for engaging in illegal, unfair and deceptive actions related to the purchase and sale of a motor vehicle which involved two retail installment sales contracts. The Plaintiff claims that Hoffman's illegal, unfair and deceptive actions violated the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA"), the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. §§ 36a-770 *et seq.* ("RISFA"), and the Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat. §§ 36a-645 *et seq.*, and that Hoffman committed fraud, negligent misrepresentation, fraudulent misrepresentation, and breach of contract in the process. Defendant Santander Consumer USA ("Santander") retained the benefit of the retail installment sales contract for the purchase of the vehicle, and Defendant Budco Financial Services, Inc. ("BFS") retained benefit of the retail installment sales contract

for the purchase of a service contract for the vehicle, Santander is liable under the CCPA and CUTPA for its illegal activities associated with the retail installment sales contract assigned to it. BFE is liable under TILA, RISFA, and CUTPA for its illegal activities associated with the retail installment sales contract assigned to it.

2. Plaintiff is a consumer and natural person residing in East Hartford, Connecticut.

3. Defendant Hoffman is a Connecticut corporation that operates an automobile dealership in West Simsbury, Connecticut.

4. Defendant Santander is an Illinois corporation registered with the Connecticut Secretary of State, Business ID 0878713 and is a subsidiary of Banco Santander Centro Hispano SA (STD).

5. Defendant BFS is a corporation located in Michigan.

6. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7. This court has jurisdiction over Hoffman because it is a Connecticut corporation that regularly conducts business in this state.

8. This court has jurisdiction over BFS because it is a corporation that regularly conducts business in Connecticut.

9. This court has jurisdiction over Santander because it is a corporation that regularly conducts business in Connecticut.

10. Venue in this court is proper, because the plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

11. On or around the beginning of November 2010, Plaintiff was looking to purchase an automobile, and she applied through the website roadloan.com to be preapproved for financing, which website was maintained by Santander.

12. On or around November 12, 2010, Plaintiff received an email stating that the finance application she had submitted through roadloan.com had been approved, and that she had been approved for financing up to $14,100.

13. The aforementioned email gave Plaintiff contact information for Hoffman, and within an hour of having received that email, she received a telephone call from and spoke with Steve Durham, who was the General Manager of Hoffman at that time.

14. During that telephone conversation, Steve Durham told Plaintiff that her application for financing was on his desk and that there were 250 different cars at Hoffman that she had already been preapproved to purchase.

15. The next day, on November 13, 2010, Plaintiff received a call from and spoke with Chris Gebauer, who was a sales and leasing consultant with Hoffman, and Plaintiff made an appointment to come into Hoffman and meet with Chris Gebauer that same day.

16. Later that same day, Plaintiff went to Hoffman with her grandmother and her two children, and Plaintiff met with Chris Gebauer while her family waited for her in the car.

17. During their meeting, and before Plaintiff went to look at any of the vehicles on the lot, Plaintiff told Chris Gebauer that she did not want to pay more than $15,000 for a car, and that she could only afford to pay no more than $400 a month, and she had $1,500 to use as a down payment on the vehicle.

18. Chris Gebauer and Plaintiff had a specific discussion concerning payment of insurance, and Plaintiff told him that her $1,500 down payment had to cover the cost of the insurance for the vehicle as well; Chris Gebauer told her that would not be a problem

19. During their meeting, Chris Gebauer told Plaintiff that she was approved for three cars – a 2007 Honda Accord, an Infiniti G-35X, and a Nissan Altima.

20. That same day, Plaintiff test drove the 2007 Honda Accord and the Infiniti G-35X, and she told Chris Gebauer that she wanted to purchase the Infiniti G-35X.

21. Chris Gebauer had Plaintiff sign paperwork to purchase the Infiniti G-35X, and he told Plaintiff that she had to put $200 down in order to keep the car off of the market and to take it off of Hoffman's website. That same day, Plaintiff borrowed $200 from her grandmother and gave it to Chris Gebauer.

22. After papers were signed and the deposit was given, Chris Gebauer told Plaintiff that she would need to get a co-signor in order to get approved for the Infiniti G-35X.

23. Although Plaintiff was frustrated by this revelation, which contradicted the prior representation that she had been preapproved based upon her own credit, Plaintiff needed a car, and she was excited about the prospect of purchasing a late model vehicle, so she asked her grandmother to co-sign.

24. Plaintiff's grandmother reluctantly agreed to act as a so-signor to purchase the Infiniti G-35X, and that same day, Plaintiff's grandmother provided Chris Gebauer with her personal and financial information.

25. Chris Gebauer told Plaintiff that she should return to Hoffman on Wednesday, November 17, 2010, to pay the remaining $1,300 down payment and pick up the Infiniti G-35X.

26. Plaintiff explained to Chris Gebauer that her grandmother was going to be out of town and would not be available to accompany her to Hoffman on November 17th, and Chris Gebauer replied that her grandmother already had signed everything that she needed to sign, and therefore she did not need to be present at that time.

27. On November 17, 2010, Plaintiff returned to Hoffman to pay the remaining $1,300 down payment and pick up the Infiniti G-35X; upon arriving, Chris Gebauer informed Plaintiff that she was not approved for the Infiniti and that the only car she could purchase was the 2007 Honda Accord.

28. Gebauer also told her that she could not take delivery of the 2007 Honda Accord that day because Hoffman needed her grandmother to sign additional paperwork to purchase that vehicle.

29. Plaintiff was frustrated, because she preferred the Infiniti, but she decided to proceed with the transaction nonetheless.

30. Plaintiff and her grandmother visited Hoffman the following Friday, November 19, 2010. On that day, Hoffman representatives informed Plaintiff that she needed to pay an additional $650 towards the down payment on the 2007 Honda Accord, or else the car would have to be placed in her grandmother's name only; Plaintiff reluctantly paid Hoffman $50 in cash, and she paid $600 with her credit card in addition to the $1,500 that Plaintiff had already paid Hoffman towards the purchase of the vehicle.

31. Plaintiff and her grandmother met with Chris Gebauer, Hoffman General Manager Steve Durham, and Hoffman Finance Manager Elizabeth Rumore, and during that meeting, both Plaintiff and her grandmother reviewed and signed paperwork to purchase the 2007 Honda Accord.

32. Included in the paperwork signed by Plaintiff and her grandmother on November 19, 2010 was a retail installment sales contract (the "Contract").

33. The Contract was signed by Plaintiff's grandmother as the buyer and Plaintiff as the co-buyer, and Hoffman was listed as the Creditor, and Plaintiff provided Hoffman with full consideration pursuant to the express conditions contained in the Contract, and the Contract contained no valid condition precedent or subsequent regarding Hoffman's ability to assign the Contract to a third party.

34. Pursuant to the Contract, Plaintiff purchased the 2007 Honda Accord for a cash price of $18,247.23 (not including sales tax), which was approximately $6,000 in excess of the fair retail value for the Vehicle as measured by the NADA Guide, Eastern edition.

35. Notwithstanding Plaintiff and her grandmother signed the Contract on Friday, November 19, 2011; however, Hoffman backdated the Contract to make it appear as though Plaintiff and her grandmother signed the Contract on Wednesday, November 17, 2010.

36. Plaintiff also signed on November 19, 2010 an additional retail installment sales contract to finance a service contract for the 2007 Honda Accord (the "Second Contract") under which Hoffman was the creditor and Plaintiff was the purchaser; the Second Contract was assigned by Hoffman to BFS for valuable consideration.

37. The Second Contract was dated November 19, 2010, and Hoffman violated TILA under the Second Contract because it listed a false down payment of $185.50, and the print stating the date that the first payment was due was completely illegible.

38. Because the aforementioned TILA violations were apparent on the face of the Second Contract, BFE is also liable under TILA.

39. Hoffman and BFE are also liable under RISFA for their TILA violations.

40. Plaintiff was unable to take delivery of the 2007 Honda Accord that same day, however, because Hoffman had refused to include the cost of insurance on the 2007 Honda Accord as part of her down payment notwithstanding Gebauer's prior representation.

41. Plaintiff borrowed money from her boyfriend and paid the insurance for the 2007 Honda Accord, and she returned to Hoffman a fourth time and picked up the vehicle.

42. On November 20, 2010, a Temporary On-Line Registration Certificate was issued by Hoffman through the Connecticut Department of Motor Vehicles for the Honda Accord and which registered the Honda Accord through January 20, 2011.

43. On or around December 7, 2010, Chris Gebauer called Plaintiff and told her that there was a problem with the 2007 Honda Accord and that Santander was trying to repossess it; Chris Gebauer told her that Hoffman was having a problem verifying her employment and that they needed additional information regarding Plaintiff's grandmother's social security income; Plaintiff provided Chris Gebauer with the additional employment and income verification information that he had requested.

44. The next day, Hoffman General Manager Steve Durham called Plaintiff and left a message for her, and on that message, he told Plaintiff that she should not drive the 2007 Honda Accord because it was not registered.

45. On or around December 17, 2010, Elizabeth Rumore telephoned and spoke with Plaintiff, and during that conversation, she told Plaintiff that she would have to make the first payment on the 2007 Honda Accord to Santander over the phone.

46. On or around December 17, 2010, Plaintiff called the Santander number that had been provided to her by Elizabeth Rumore and spoke with a Santander representative, and during that telephone call, Plaintiff provided that representative with her debit card information, and Plaintiff also provided Santander with the authorization necessary to automatically withdraw the first payment – which was the December 2010 payment - from Plaintiff's bank account.

47. Santander failed to process the aforementioned payment, and when Plaintiff contacted Santander four days later, she was informed that her December 2010 payment was four days late.

48. On or around January 18, 2011, Plaintiff received a billing statement from Santander which stated that Plaintiff owed the December 2010 payment and the January 2011 payment on the 2007 Honda Accord, and included in that billing statement was a late-payment fee pertaining to the December 2010 payment.

49. By its actions as described above, Hoffman violated TILA, RISFA, CUTPA, and the CCPA, and committed fraud, fraudulent misrepresentation, and negligent misrepresentation and breach of contract. Santander, as the holder of the Contract, is liable under the CCPA for its illegal collection activities pursuant to the

Contract and us liable under CUTPA; BFS, as holder of the Second Contract, is liable under TILA, RISFA, and CUTPA.

**Wherefore, with respect to Hoffman, Plaintiff claims**, for Hoffman's fraud, Hoffman is liable to Plaintiff for actual damages and common law punitive damages as well as any damages that may be available to her pursuant to Article 9 of the UCC; for Hoffman's TILA violations pursuant to the Contract - actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $5,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); and for Hoffman's willful violations of RISFA under the Contract, an order that Hoffman is barred from collecting any finance charges under the Contract pursuant to C.G.S. § 36a-786; for Hoffman's TILA violations pursuant to the Second Contract - actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $5,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); for Hoffman's violation of CUTPA - statutory punitive damages pursuant to C.G.S. § 42-110g(a) and attorney's fees pursuant to C.G.S. § 42-110g(d), and an order from the Court ordering Hoffman to cease and desist from engaging in unfair and deceptive trade practices; Plaintiff is also entitled to statutory damages of $1,000, actual damages, and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 36a-646 for Hoffman's violation of the CCPA; such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against Hoffman.

**Wherefore, with respect to Santander, Plaintiff claims:** statutory damages of $1,000, actual damages, and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 36a-646 for Santander's violation of the CCPA; for Santander's violation of CUTPA - statutory punitive damages pursuant to C.G.S. § 42-110g(a) and attorney's fees pursuant to C.G.S. § 42-110g(d) and an order from the Court ordering Santander to cease and desist from engaging in unfair and deceptive trade practices; such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against Santander.

**Wherefore, with respect to BFE, Plaintiff claims:** for BFE's TILA violations pursuant to the Second Contract - actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $500, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); for BFE's violation of CUTPA - statutory punitive damages pursuant to C.G.S. § 42-110g(a) and attorney's fees pursuant to C.G.S. § 42-110g(d) and an order from the Court ordering BFE to cease and desist from engaging in unfair and deceptive trade practices; such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against BFE.

          **PLAINTIFF, KIRBY J. WHITLEY**

By: /s/Daniel S. Blinn
   Daniel S. Blinn, ct02188
   Matthew W. Graeber, ct27545
   Consumer Law Group, LLC
   35 Cold Spring Rd. Suite 512
   Rocky Hill, CT  06067
   Tel. (860) 571-0408
   Fax. (860) 571-7457
   dblinn@consumerlawgroup.com
   mwgraeber@consumerlawgroup.com